IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00222-JLK

RIGHTHAVEN LLC, a Nevada limited-liability company,

        Plaintiff,

v.

WILLIAM SUMNER, an individual;
And DAILYKIX.COM, an entity of unknown origin and nature,

        Defendants.

---

**PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANT WILLIAM SUMNER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH CERTIFICATE OF SERVICE**

---

      Righthaven LLC ("Righthaven") hereby opposes Defendant William Sumner's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion", Doc. # 9). Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") on the grounds that there is an insufficient basis for the Court to exercise of personal jurisdiction over him. Righthaven's opposition is supported by the declaration of Steven A. Ganim, Esq. (the "Ganim Decl."), who serves as in-house counsel for the company and is counsel of record in this action, along with the declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), who is outside counsel for the company and is lead counsel in this action.

      As argued below, Righthaven asserts the Court can properly exercise specific personal jurisdiction over the Defendant. Defendant's Motion should be denied upon such a finding. Alternatively, to the extent the Court is inclined to grant the Motion, Righthaven requests an opportunity to conduct jurisdictional discovery given the factual assertions contained in the Defendant's accompanying declaration (Doc. # 9-2). Righthaven believes the record before the

Court, however, clearly demonstrates that specific personal jurisdiction can be exercised over the Defendant without the need for jurisdictional discovery.

## I.   STATEMENT OF FACTS.

On January 27, 2011, Righthaven filed this action for copyright infringement based on the unauthorized display of a photograph entitled, "TSA Agent performs enhanced pat-downs" (the "Work"). (Doc. # 1 at 2; Ganim Decl. ¶¶ 3-5.) The Work depicts a Transportation Safety Administration Agent performing a "pat-down" search of a traveler in a Denver, Colorado airport. (*Id.* at 2-3; Ganim Decl. ¶ 3.) No other geographic location is associated with the Work. (Doc. # 1 at 3.) *The Denver Post* originally published the Work on or about November 18, 2010. (*Id.* at 3-4; Ganim Decl. ¶ 4.) The claimed unauthorized replication of the Work occurred only a few days after its publication by *The Denver Post*. (*Id.*; Ganim Decl. ¶¶ 4-5.) On December 8, 2010, Righthaven was granted registration in and to the Work by the United States Copyright Office. (*Id.* at 5, Ex. 3; Ganim Decl. ¶ 7.)

Specifically, Righthaven alleges that on or about November 21, 2010, Defendant posted an unauthorized copy of the Work on the Internet website <dailykix.com> (the "Website"). (*Id.* at 2; Ganim Decl. ¶ 5.) Righthaven further contends the copyrighted infringement at issue in this case was willfully committed. (Doc. # 1 at 5.) Defendant is alleged to be the registrant, administrative and technical contact for Internet domain associated with the Website. (*Id.* at 2; Ganim Decl. ¶ 6.) Righthaven also maintains that although the Website lists Defendant DailyKix.com as the self-proclaimed owner of all copyrighted works appearing on the Website, it has been unable to ascertain the entity's origin or nature. (Doc. # 1 at 2.) Righthaven's Complaint in this action seeks an award of statutory damages and other relief should it prevail following a jury trial in this action. (*Id.* at 6-7.)

On April 5, 2011, Defendant filed the Motion, which seeks to dismiss Righthaven's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Doc. # 9.) The Motion was Defendant's first appearance in this action. (*Id.*) Defendant filed a supporting declaration

with the Motion. (Doc. # 9-2.) Given that this case is at its inception, the parties have conducted no discovery.

As set forth below, Righthaven respectfully requests the Court deny the Motion through a finding that it can properly exercise personal jurisdiction over the Defendant. Alternatively, Righthaven asks the Court for permission to conduct jurisdiction discovery in the event it is inclined to grant the Motion based on the record before it.

**II.     STANDARDS GOVERNING DEFENDANT'S MOTION.**

**A.     Rule 12(b)(2) Standards.**

Procedurally, Rule 12(b)(2) authorizes dismissal of actions in which the district court lacks personal jurisdiction over a party. The plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction where the issue is "raised early on in the litigation . . ." and is based on the pleadings, attachments and submissions, such as declarations or affidavits. *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011); *accord Benton v. Cameco Corp.,* 375 F.3d 1070, 1074 (10th Cir. 2004). In meeting this *prima facie* burden, the plaintiff need only adduce evidentiary facts that support its jurisdictional claim. *Regional Airline Mgmt. Sys., Inc. v. Airports USA, Inc.,* 2007 WL 1059012, at *3 (D. Colo. Apr. 4, 2007). All well pled facts asserted in the complaint must be taken as true to the extent they are uncontroverted or otherwise not deemed conclusory. *Wentz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995); *Ten Mile Indus. Park v. W. Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir. 1987). If there are conflicting sworn statements or evidence presented, all factual disputes shall "be construed in a light most favorable to the plaintiff." *Doe v. National Med. Servs.,* 074 F.2d 143, 145 (10th Cir. 1992). The Court must determine the merits of Defendant's claim that personal jurisdiction cannot be exercised over him in view of the foregoing standards.

Substantively, personal jurisdiction over a non-resident defendant is determined under a two-part test: (1) there must be personal jurisdiction under the long-arm statute of the state where jurisdiction is being asserted; and (2) the exercise of personal jurisdiction must comply with due

process. *See National Bus. Brokers, Ltd., v. Jim Williamson Prods., Inc.,* 115 F. Supp.2d 1250, 1253 (D. Colo. 2000); *Allison v. Wise,* 621 F.Supp.2d 1114, 1117 (D. Colo. 2007).

The personal jurisdiction analysis under the first part of the two-part test is collapsed into the due process analysis in this jurisdiction because Colorado's long-arm statute, C.R.S. §13-1-124, extends to constitutional limits of due process. *See Wise v. Lindamon*, 89 F.Supp.2d 1187, 1189 (D. Colo. 1999). Thus, the Court's Rule 12(b)(2) analysis should be focused on whether personal jurisdiction can be asserted over the Defendant consistent with the Due Process Clause of the Fourteenth Amendment.

The exercise of personal jurisdiction is constitutionally proper where there are continuous and systematic contacts with the forum state (general jurisdiction) or where there are sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction does not offend the traditional notions of fair play and substantial justice (specific jurisdiction). *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir. 1996). The allegations of a complaint must be taken as true for purposes of performing a personal jurisdiction analysis under Rule 12(b)(2). *Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir. 1984).

Application of the foregoing procedural and substantive standards demonstrates that personal jurisdiction can properly be exercised over the Defendant. Accordingly, his Motion must be denied.

        **B.**     **Jurisdiction Discovery Standards.**

Given the factually intensive nature of a personal jurisdiction analysis, "either party should be allowed discovery on the factual issues raised . . . " by a Rule 12(b)(2) motion to dismiss. *Sizova v. National Inst. of Standards & Tech.,* 282 F.3d 1320, 1326 (10th Cir. 2002)(internal quotation omitted); *accord Health Grades, Inc. v. Decatur Mem'l Hosp.,* 190 Fed.Appx. 586, 589 (10th Cir. 2006). While the district court is granted broad discretion in determining the propriety of jurisdictional discovery, a refusal to grant discovery constitutes an

abuse of discretion if either the pertinent facts are controverted or if a more satisfactory showing of the facts is necessary. *Id.* In fact, permitting jurisdictional discovery has been authorized under similar circumstances by a variety of jurisdictions beyond the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit"). *See United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 637 (1st Cir. 2001); *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C. Cir. 1991); *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir. 1986); *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir. 1983); *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

Here, Righthaven maintains the Court can properly exercise of personal jurisdiction over the Defendant to in view of the record before it. This assertion aside, however, should the Court be inclined to conclude otherwise, Righthaven respectfully requests an opportunity to conduct jurisdictional discovery. This request is made in view of the numerous statements contained in Defendant's supporting declaration (Doc. # 9-2) upon which the Court must consider and in further view of the Motion being presented at the inception of this case. (Mangano Decl. ¶ 5.) *See Sizova,* 282 F.3d at 1326; *see also Health Grades, Inc.,* 190 Fed.Appx. at 589.

### III.   DEFENDANT'S MOTION MUST BE DENIED.

#### A.   Defendant is Subject to Specific Personal Jurisdiction.

Defendant's Motion is brought under Rule 12(b)(2), which authorizes dismissal if personal jurisdiction cannot be properly exercised over a party. (Doc. # 9.) Righthaven asserts that specific personal jurisdiction can be exercised over the Defendant. Accordingly, the Motion should be denied.

As a threshold matter, Righthaven is not contending that general personal jurisdiction can be exercised over the Defendant. Rather, Righthaven maintains that the Defendant is subject to specific personal jurisdiction. This conclusion is supported by the allegations in the Complaint, which detail the fact that the Work was composed in this forum, was originally published in this forum, and the Defendant knew that the Work came from this forum. These allegations, as

supplemented by the additional evidence before the Court, are germane to the Court's exercise of specific jurisdiction, not general personal jurisdiction, over the Defendant.[1]  Accordingly, the Court's analysis need not focus on general jurisdictional considerations, as Righthaven is not asserting jurisdiction on this basis.

Specific jurisdiction over a non-resident defendant generally entails someone who "purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Allison,* 621 F.Supp.2d at 1119; *see also Melea, Ltd., v. Jawer SA.,* 511 F.3d 1060, 1066 (10th Cir. 2007).  Foreseeability, *i.e.,* could the defendant reasonably foresee that his conduct could result in litigation in the state in question, is a primary consideration under a specific personal jurisdiction analysis. *Bell Helicopter Textron, Inc., v, Heliquest, Int'l. Ltd.,* 385 F.3d 1291, 1295-96 (10th Cir. 2004). The Tenth Circuit has established that in order to gain specific jurisdiction, the contacts must be "(a) an intentional action ... that was (b) expressly aimed at the forum state . . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1074-77 (10th Cir. 2008) (quoting *Calder v. Jones,* 465 U.S. 783, 787-88 (1984)). Once the foregoing contacts have been sufficiently established, the final inquiry considers whether the exercise of specific personal jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* at 1080.

The Tenth Circuit recently adopted the foregoing specific personal jurisdiction analysis standard for general Internet-related torts. *See Shrader,* 633 F.3d at 1240-42. In that case, the panel was faced with determining whether or not personal jurisdiction could be properly exercised over certain defendants accused of disseminating defamatory e-mails and posting unfavorable comments on a website. *Id.* at 1238-39. Thus, the *Shrader* decision did not involve

---

[1]  Defendant dedicates a considerable portion of the Motion attacking the allegedly conclusory allegations contained in Righthaven's Complaint, which he contends should be disregarded by the Court or, alternatively, accorded little weight in its analysis. (Doc. # 9 at 15-17.) Righthaven is not resting solely on the allegations contained in its Complaint, which far exceed the pleading

allegations of Internet-based copyright infringement such as those subject to Defendant's personal jurisdiction challenge.

In its decision, the Tenth Circuit panel expressly acknowledged that it had "yet to flesh out a comprehensive position in a published opinion dealing with omnipresent internet activity like web sites and posts . . . ." *Shrader,* at 1241. Despite being an apparent issue of first impression, the Tenth Circuit panel espoused a personal jurisdiction analysis standard based upon the "effects" test set forth in the seminal decision in *Calder v. Jones,* 465 U.S. 783 (1985). *Id.* at 1242. In doing so, the Tenth Circuit panel adopted an "effects" test virtually identical to that employed by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") in cases involving Internet-based torts. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 803 (9th Cir. 2004); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997); *accord Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010)(containing multiple references to the Ninth Circuit's decision in *Columbia Pictures Television* without once disapproval or overruling its personal jurisdictional analysis).[2]

Specifically, in setting forth the personal jurisdiction analysis standards applicable to general Internet-based tortious conduct, the Tenth Circuit panel, employing a rationale very similar to the Ninth Circuit's application of the "effects" test, reasoned:

> [I]t is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having activity or operation accessible there.

*Shrader,* 633 F.3d at 1240 (emphasis in original). The Tenth Circuit panel continued its analysis of the unique question before it by acknowledging:

---

[2] Righthaven has prevailed over numerous challenges based on the lack of specific personal jurisdiction in other cases under the "effects" test. *See, e.g., Righthaven LLC v. Magerwager.com, Inc.,* 2010 WL 4386499, at *3-5 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *1 (D. Nev. Sept. 2, 2010).

> Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed above, in considering what "more" could create personal jurisdiction for such [Internet-based tortious] activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.

*Id.*

As stated above, the Tenth Circuit panel's decision in *Shrader* was limited to general Internet-related torts. *See Shrader,* 633 F.3d at 1240-42. The decision did not expressly establish a personal jurisdictional analysis standard applicable to Internet-based copyright infringement claims, such as those asserted by Righthaven in the case before this Court.

While the Tenth Circuit has yet to address the issue the issue of personal jurisdiction involving a claim of Internet-based copyright infringement, the Ninth Circuit has done so through the application of two decisions. *See Columbia Pictures Television*, 106 F.3d at 289; *accord Brayton Purcell LLP,* 606 F.3d at 1128. Specifically, the Ninth Circuit has expressly held that willful copyright infringers who reproduce content from a source known to exist in the forum purposefully avail themselves of jurisdiction within said forum. *Columbia Pictures Television,* 106 F.3d at 289. In its decision, the Ninth Circuit panel in *Columbia Pictures Television* expressly held that the *purposeful availment inquiry,* which is tantamount to the "express aiming" requirement under the *Calder* "effects" test, *ends* in copyright infringement cases where the defendant "willfully infringed copyrights owned by [the plaintiff], which, as [the defendant] knew had its principal place of business in the [forum jurisdiction]." *Id*. While the Ninth Circuit panel's decision in *Columbia Pictures Television* is not controlling on this Court's analysis, it should nevertheless be given significant consideration in deciding the issues before it.

Despite the above cited Ninth Circuit decisions in *Columbia Pictures Television* and the decision's subsequent approval in *Brayton Purcell LLP*, the Tenth Circuit is apparently not alone in lacking a case containing the necessary factual circumstances to set forth a personal jurisdiction analysis standard applicable to Internet-based claims of copyright infringement.

Recently, the United States Court of Appeals for the Second Circuit certified a question concerning the scope of New York's long-arm statute in a copyright infringement action commenced by a New York book publisher against an Oregon non-profit organization located in Arizona that operated two websites, one located in Oregon and one located in Arizona, that were allegedly serving as Internet-based conduits for the unauthorized dissemination of he plaintiff's copyrighted books. *See Penguin Group (USA) Inc., v. American Buddha,* 609 F.3d 30, 31-35, 41-42 (2d Cir. 2010); *accord Penguin Group (USA) Inc., v. American Buddha,* 2011 WL 1044581 (Ct. of App. N.Y. Mar. 24, 2011). Upon review of the certified question presented to it, the Court of Appeals of New York concluded that under its long-arm statute the alleged injury from the Internet-based infringement of copyrighted works occurring outside the forum state resulted in harm to the holder of said rights within the forum state. *Penguin Group (USA) Inc.,* 2011 WL 1044581. In so holding, the court recognized the unique rights granted under the Copyright Act and "widely recognized" threats posed to copyright owners through acts of digital piracy that could result in unauthorized dissemination of protected works "throughout the country and perhaps the world." *Id.* In sum, the court's analysis and answer to the certified question before it appears wholly consistent with the analysis employed by the Ninth Circuit as discussed above. *See Columbia Pictures Television*, 106 F.3d at 289; *accord Brayton Purcell LLP,* 606 F.3d at 1128. This decision, as well as the decisions from the Ninth Circuit, should provide guidance to this Court in adjudicating the Motion before it.

      In sum, Righthaven maintains that when the Court properly examines the above-cited authorities in view of the allegations and facts before it, it will properly conclude that specific personal jurisdiction can be exercised of the Defendant. Accordingly, the Defendant's Motion should be denied upon such a finding.

                            1.     ***Defendant is alleged to have committed an intentional act, thereby satisfying the first specific jurisdiction analysis factor.***

The first factor in the Court's specific personal jurisdiction analysis considers whether the Defendant has committed an intentional act. *See Shrader,* 633 F.3d at 1240-42. Righthaven's allegations and the record before satisfy this first specific personal jurisdiction analysis factor.

It is beyond dispute that Defendant is alleged to have committed an intentional act in this case. Specifically, Righthaven has alleged the Defendant engaged in willful copyright infringement. (Doc. # 1 at 2-3, 6.) In so alleging, Righthaven contends the Defendant willfully reproduced the Work without authorization. (*Id.*) Moreover, Righthaven has asserted that Defendant's conduct was "purposefully directed at Colorado residents." (*Id.* at 2.) These allegations, which should be assumed as true for purposes of the Motion given the procedural posture of this case, establish the Defendant's commission of an intentional act.

Moreover, while not controlling authority in this judicial district, a finding that Defendant's alleged act of copyright infringement satisfies the "intentional act" requirement under a specific personal jurisdiction analysis fact would be consistent with several other decisions reached in the district of Nevada involving Internet-based copyright infringement claims asserted against non-resident Righthaven defendants. *See Magerwager.com, Inc.,* 2010 WL 4386499, at *3-5 (exercising specific personal jurisdiction over Canadian defendants); *Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *1 (denying foreign defendant's personal jurisdiction challenges through the exercise of specific personal jurisdiction); *see also Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011)(Doc. # 28 at 3-6, denying defendants' personal jurisdiction challenges by exercising personal jurisdiction); *Righthaven LLC v. Mostofi,* Case No. 2:10-cv-01066-KJD-GWF (D. Nev. March 22, 2011)(Doc. # 19 at 2-5, finding the exercise of specific personal jurisdiction proper in denying the defendant's personal jurisdiction challenge); *Righthaven LLC v. EMTCity.com,* Case No. 2:10-cv-00854-HDM-PAL (D. Nev. Jan. 24, 2011)(Doc. # 28, denying personal jurisdiction claim by non-resident defendant by finding the exercise of specific personal jurisdiction appropriate); *Righthaven LLC v. Industrial Wind Action Group,* Case No.

2:10-cv-0601-RLH-PAL (D. Nev. Sept. 24, 2010)(Doc. # 16, denying motion for lack of personal jurisdiction brought by non-resident defendant by exercising specific jurisdiction).

Defendant's statements in his declaration (Doc. # 9-2) do not alter this conclusion. First, Righthaven is entitled to have uncontested allegations before the Court accepted as true for purposes of adjudicating the Motion. *See Wentz,* 55 F.3d 1505; *Ten Mile Indus. Park,* 810 F.2d at 1524. Righthaven has alleged that on or about November 21, 2010, Defendant posted an unauthorized copy of the Work on the Website. (Doc. # 1 at 2.) Righthaven has further alleged that Defendant is the registrant, administrative and technical contact for Internet domain associated with the Website. (*Id.*; Ganim Decl. ¶ 6.) The Defendant does not contest these factual allegations through his declaration. Rather, the Defendant acknowledges that he owns and operates the Website in question. (Doc. # 9-2 ¶ 2.) The also Defendant admits the Work was displayed on the Website. (Doc. # 9-2; *see also* Ganim Decl. ¶ 5.) Defendant does he assert that the Work appeared on the Website with consent from the *Denver Post*. (*Id.*) Defendant's admissions and omissions unquestionably establish a *prima facie* copyright infringement claim. *See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)(To recover for copyright infringement, the plaintiff must demonstrate: "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant."). Righthaven submits that given these facts, it has unquestionably satisfied the first specific personal jurisdiction analysis factor.

Despite essentially conceding that Righthaven has established a *prima facie* copyright infringement claim, the Defendant attempts to traverse the Work's unauthorized display on the Website by alleging it was replicated through an automated online media service. (Doc. # 9-2 ¶¶ 7-12.) Defendant's assertions, however, completely ignore that as the owner and operator he undoubtedly had editorial control over the content appearing on the Website. (*Id.* ¶ 2.) Simply put, content does not automatically appear on one's Website without some intentional act or

editorial oversight by its owner, operator, administrative contact and technical contact person, which in this case is the same person – the Defendant.

In sum, the foregoing discussion of the facts and allegations presented conclusively establish that Defendant engaged in an intentional act under the first specific personal jurisdiction analysis factor.

### 2. *The second specific personal jurisdiction analysis factor is satisfied because the Defendant's alleged conduct was expressly aimed at the forum state.*

The second specific jurisdiction analysis factor considers whether the Defendant's alleged conduct was expressly aimed at the forum state. *See Shrader,* 633 F.3d at 1240-44. Righthaven's allegations and the record before satisfy this second, "express aiming," specific personal jurisdiction analysis factor.

Righthaven's assertions in this case unquestionably allege that Defendant's conduct was expressly aimed at this forum. The Work at issue in this case undoubtedly emanated from this forum. (Doc. # 1 at 2; Ganim Decl. ¶ 3.) The Work photographically captured the pat-down search of a TSA employee in a Denver, Colorado airport. (*Id.* at 3; Ganim Decl. ¶ 3.) *The Denver Post* originally published the Work on or about November 18, 2010. (*Id.*; Ganim Decl. ¶ 4.) *The Denver Post* reaches more Denver-area adults than any television show, radio program, publication or website, thereby making it Colorado's media leader. (Mangano Decl. ¶ 3, Ex. 1.) Accordingly to publicly disseminated statistics, 1.3 million adults read *The Denver Post* at least once during any given week. (*Id.*) In fact, *The Denver Post* "has the largest print, online, mobile and social media audiences in Denver and Colorado and among the top of the nation in terms of newspaper readership and [I]nternet access." (*Id.*) Given the widespread forum-based readership of *The Denver Post*, it would be wholly consistent for the Court to conclude, as several judges have done in cases involving the alleged infringement of copyrighted material emanating from the *Las Vegas Review-Journal*, that the second analysis prong is "easily satisfied

. . ." when the alleged copyrighted material, arose from such a forum-prominent media source. *See Majorwager.com, Inc.,* 2010 WL 4386499, at *4. In fact, such circumstances support the conclusion that the forum state itself was the focal point of Defendant's alleged copyright infringement. *See Shrader,* 633 F.3d at 1244.

Further supporting Righthaven's contentions in this regard are further buttressed by the fact that the Work photographically captures actions within the forum state. (Doc. # 1 at 3; Ganim Decl. ¶ 3.) No other geographic location is associated with the Work. (*Id*.) Righthaven has additionally alleged that the unauthorized copy of the Work has been made available on Defendant's Website to Colorado residents without restriction. (*Id.*) In this regard, Defendant's declaration fails to provide any sworn statements concerning whether or not the unauthorized replication of the Work was made accessible to Colorado residents, whether Colorado residents in fact accessed the infringing replication of the Work posted on the Website or whether firewall or other means of restricting access to the Website by Colorado-related Internet Protocol addresses were employed by him to restrict accessibility. (*See* Doc. # 9-2.) Accordingly, these unanswered questions must be viewed in Righthaven's favor given the Complaint's allegations and the Defendant's failure to directly contest their obvious application to this Court's specific personal jurisdiction analysis given the procedural timing of the Motion. *See Wentz,* 55 F.3d 1505; *Ten Mile Indus. Park,* 810 F.2d at 1524.

With these facts and circumstances in mind, Defendant asks the Court to conclude that he did not expressly aim any alleged infringing activity to the forum state. (Doc. # 9-2 at 2-5.) In doing so, the Defendant admits the Work appeared on the Website he owns, operates and for which he has failed to refute Righthaven's contentions that he maintains all administrative, technical and, necessarily, editorial control. (*Id.* ¶¶ 2, 11; Doc. # 1 at 2; Ganim Decl. ¶ 6.) Moreover, Defendant apparently concedes that he did not obtain *The Denver Post's* consent prior to displaying the Work on or about November 21, 2010, despite exercising exclusive dominion and control over the Website. (*See* Doc. # 9-2; Ganim Decl. ¶¶ 5-6.)

Instead, Defendant relies on a self-serving, technical overview of the alleged Internet-related functionality that apparently resulted in the unauthorized Work magically appearing on his Website through an online automated content dissemination service that is predicated on the popularity of certain news media and other aggregated material on the Internet. (Doc. # 9-2 ¶¶ 9-12.) In advancing his argument, Defendant essentially claims that he is not liable for an unauthorized replication of the Work appearing on the Website that he owns, controls, and has technical and administrative control over. This liability, apparently based on the Defendant's interpretation of the circumstances, is more appropriately directed to another source, such as mix.com, digg.com and/or deadseriousnews.com. (*Id.*) In short, someone is liable for the unauthorized posting of the Work on his Website – just not him.

Defendant's highly technical Website and Internet content functionality arguments are made without providing the Court without a scintilla of corroborating evidence. (*Id.*) Given the Motion was filed as the Defendant's first appearance in this action, Righthaven certainly has neither been afforded the opportunity to contest the Defendant's bald assertions nor has it obtained any materials, whether supportive of Defendant's claims or not, through discovery. Likewise, the Defendant has also failed to provide the Court with any corroborating evidence upon which it can adopt his lengthy and technical interpretation of the means by which his Website allegedly acquired and displayed the unauthorized replication of the Work at issue in this case. (*Id.*) Righthaven unquestionably objects to the Court's reliance on such inadmissible, self-serving, hearsay and multiple hearsay assertions, which are totally devoid of any reliable evidentiary foundation upon which admissibility could be claimed, in adjudicating the Motion before it. (Mangano Decl. ¶ 4.)

Defendant's obvious inadmissible evidentiary hurdles aside, his arguments concerning Website functionality and source interaction completely disregard that he is the owner, operator, registrant, administrative contact, and technical contact for the Website. (Doc. # 9-2 ¶ 2; Doc. # 1 at 2; Ganim Decl. ¶ 6.) Furthermore, Defendant undoubtedly exercises editorial control over

what appears and what does not appear on the Website given his unfettered degree of autonomy. (Doc. # 9-2 ¶ 2; Doc. # 1 at 2; Ganim Decl. ¶ 6.) Any other conclusion would defy the admissions contained in his declaration (Doc. # 9-2 ¶ 2) and the uncontested allegations contained in Righthaven's Complaint, which include allegations that the Defendant knew the Work emanated from, was published in, and is geographically associated with this forum. (Doc. # 1 at 3; Ganim Decl. ¶ 6.)  These uncontested allegations, admitted facts, circumstances, and conflicting evidentiary views must be construed in favor of Righthaven's assertion that the second specific personal jurisdiction factor has been established.  *See Wentz,* 55 F.3d 1505; *Ten Mile Indus. Park,* 810 F.2d at 1524; *see also National Med. Servs.,* 974 F.2d 143, 145 (10th Cir. 1992). Even if Righthaven were not afforded this benefit, the record before the Court still demonstrates that the second specific personal jurisdiction analysis factor is satisfied.

### 3. *The brunt of the injury is felt in the forum state, thereby satisfying the third specific personal jurisdiction analysis factor.*

The third factor in the Court's specific personal jurisdiction analysis considers whether the brunt of the injury caused by Defendant is felt within the forum state. *See Shrader,* 633 F.3d at 1240-42.  Once again, Righthaven's allegations and the record before satisfy the requirements of this third specific personal jurisdiction analysis factor.

As argued above, *The Denver Post* composed the Work, which involved an incident at an airport in the State of Colorado.  (Doc. # 1 at 3; Ganim Decl. ¶ 5.) On or about November 18, 2010, *The Denver Post* published the Work and in doing so made it accessible to numerous Denver, Colorado residents, as well as to people living throughout the State of Colorado via the company's website. (Ganim Decl. ¶ 4; Mangano Decl. ¶ 3, Ex. 1; Doc. # 1 at 2.)  *The Denver Post* is "Colorado's media leader, reaching more Denver-area adults than any television show, radio program, publication or web site."  (Mangano Decl. ¶ 3, Ex. 1.)  In fact, the only geographic location associated with the Work is Denver, Colorado.  (Doc. # 1 at 2.)  Only a few

days after *The Denver Post* published the Work, an unauthorized version appeared on the Website that is owned and operated by the Defendant. (Ganim Decl. ¶¶ 4-5; Doc. # 1 at 2-3.)

These circumstances, coupled with the Defendant's alleged unauthorized replication of the Work, undoubtedly caused harm to *The Denver Post*. Simply put, the Defendant's alleged acts of copyright infringement occurred shortly after one of the largest forum-based media news entities published the Work. The Work's content photographically captures events occurring within this forum at a forum-based airport. All of these facts establish that the brunt of the injury arising from Defendant's alleged infringement of the Work has occurred "primarily or particularly in the forum state." *See Shrader,* 633 F.3d at 1241. Accordingly, the allegations and factual record before the Court clearly demonstrates that Righthaven has satisfied the third specific personal jurisdiction inquiry factor.

### 4. *The exercise of specific personal jurisdiction over the Defendant would not offend traditional notions of fair play and substantial justice.*

The final inquiry under the Court's analysis is whether the exercise of specific personal jurisdiction over the Defendant would offend traditional notions of fair play and substantial justice. *See Shrader,* 633 F.3d at 1240. At this point, however, it is incumbent on the Defendant "to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Dudnikov,* 514 F.3d at 1080). Defendant cannot, and has not, made such a showing in this case. Accordingly, the exercise of specific personal jurisdiction would not offend traditional notions of fair play and substantial justice.

Assuming, *arguendo*, the Court finds that Defendant's wholly speculative arguments made in support of his contention that exercising specific personal jurisdiction would offend traditional notions of fair play and substantial justice somehow "amount to a compelling case" of unreasonableness, Righthaven argues otherwise. First, Defendant argues that the forum state has

absolutely no interest in adjudicating this dispute because it is between two non-resident parties. (Doc. # 9 at 17.) Defendant is wrong for several reasons. To begin with, the State of Colorado has a fairly obvious interest in protecting the misappropriation of news media content concerning activity within the jurisdiction and published by a news media source deemed to be "Colorado's media leader . . . ." (Mangano Decl. Ex. 1.) The fact that such content was stolen from by an out-of-state defendant does not mitigate this interest. Moreover, the source publication, which is based in Denver, Colorado, along with its parent company, while not parties to this action, certainly were the victims of the Defendant's infringement. (Ganim Decl. ¶¶ 4-5.)

Defendant additionally argues that "Mr. Sumner and all evidence related to Plaintiff's purported claim are located in Georgia . . . ." (Doc. # 9 at 17.) This assertion is completely baseless. The Work emanated from the State of Colorado. (Doc. # 1 at 3; Ganim Decl. ¶ 3.) *The Denver Post* originally published the Work in this jurisdiction. (Doc. # 1 at 3; Ganim Decl. ¶ 4.) *The Denver Post* and/or MediaNews Group assigned the Work to Plaintiff. (Ganim Decl. ¶ 7.) It is unquestionable given these facts that witnesses and/or documents related to this transaction potentially reside in the State of Colorado. Thus, contrary to Defendant's unsupported assertions, all of the potentially discoverable evidence related to Plaintiff's claim is not located in Georgia. In fact, the circumstances suggest that a greater amount of potentially discoverable evidence and witnesses are located in the forum state.

Simply put, adopting Defendant's myopic view of the forum state's interest in asserting jurisdiction over this dispute would be nothing short of a travesty. Righthaven has clearly demonstrated that the exercise of specific personal jurisdiction over the Defendant would not offend traditional notions of fair play and substantial justice. As discussed above, Righthaven has also satisfied the other factors required to properly exercise specific personal jurisdiction over the Defendant. Accordingly, the Defendant's Motion should be denied.

### B.    Alternatively, The Factual Allegations And Evidence Presented Warrants Jurisdictional Discovery if The Court is Inclined to Grant The Motion.

The allegations contained in Righthaven's Complaint, coupled with the other evidence before the Court, justify the exercise of specific personal jurisdiction over the Defendant. If, however, the Court is inclined to rule that a *prima facie* basis for the exercising of specific personal jurisdiction over the Defendant has not been demonstrated, Righthaven respectfully requests an opportunity to conduct jurisdictional discovery.

As noted above, given the factually intensive nature of a personal jurisdiction analysis, "either party should be allowed discovery on the factual issues raised . . . " by a Rule 12(b)(2) motion to dismiss. *Sizova,* 282 F.3d at 1326 (internal quotation omitted); *accord Health Grades, Inc.,* 190 Fed.Appx. at 589. While the district court is granted broad discretion in determining the propriety of jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either pertinent facts are controverted or if a more satisfactory showing of the facts is necessary. *Id.*

Here, Righthaven's Complaint alleges ample, and non-conclusory, facts upon which the exercise of specific personal jurisdiction could properly be found to exist. Righthaven, however, has further supplemented these allegations with the declaration of its in-house counsel, Steven G. Ganim. Mr. Ganim's statements, which are derived from his employment with the company, add further support to Righthaven's copyright infringement allegations against the Defendant and which also demonstrate the propriety of exercising specific personal jurisdiction over him. Righthaven also maintains that its personal jurisdiction arguments are strengthened by the statements and omissions contained in the Defendant's declaration despite its obvious evidentiary shortcomings. (Doc. # 9-2.)

These observations aside, however, a substantial portion of the statements contained in Defendant's declaration are unsupported by any corroborating evidence, such as those related to

the Website's interactivity with certain automated media dissemination sources. If the Court considers these statements determinative in its personal jurisdiction analysis, Righthaven must be entitled to engage in jurisdictional discovery as to at least these issues. (Mangano Decl. ¶ 5.) Such discovery would at a minimum encompass conducting the Defendant's deposition, conducting the deposition of one or more non-parties affiliated with the automated news media dissemination sources identified by the Defendant, and document requests that seek production of all contracts, manuals and operational documents related to the Website and the Defendant's relationship with, and the functionality of, the automated news media dissemination sources relied upon. (Mangano Decl. ¶ 5.) Righthaven is hopeful that such discovery efforts are not required given the record before the Court, which supports the exercise of specific personal jurisdiction over the Defendant.

## IV. CONCLUSION.

For the foregoing reasons, Righthaven respectfully requests the Court deny the Defendant's Motion along with granting such other relief as is deemed appropriate. To the extent the Court is inclined to rule otherwise, Righthaven respectfully requests the Court permit jurisdictional discovery given the procedural timing of Defendant's Motion and in view of the factual assertions presented given the absence of discovery in this case.

Dated this 26th day of April, 2011.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

STEVEN G. GANIM, ESQ.
RIGHTHAVEN LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701

*Attorneys for Plaintiff Righthaven LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 26th day of April, 2011, I caused a copy of the **PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANT WILLIAM SUMNER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH CERTIFICATE OF SERVICE** to be to be served by the Court's CM/ECF system.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851
shawn@manganolaw.com
